W. John Tietz
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
800 N. Last Chance Gulch, Suite 101
P.O. Box 1697
Helena, Montana 59624-1697
Tel:  (406) 443-6820
Fax:  (406) 443-6883
Email:  john@bkbh.com

Eliot Lauer (*pro hac vice*)
Sylvi Sareva (*pro hac vice*)
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email: elauer@curtis.com
        ssareva@curtis.com

*Attorneys for Plaintiff*
*Columbia Falls Aluminum Company, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| COLUMBIA FALLS ALUMINUM COMPANY, LLC<br><br>                              Plaintiff,<br><br>          - against -<br><br>ATLANTIC RICHFIELD COMPANY<br><br>                              Defendant. | Case No. 18-cv-00131-DWM<br><br><br>**PLAINTIFF COLUMBIA FALLS ALUMINUM COMPANY, LLC'S BRIEF IN OPPOSITION TO MOTION TO COMPEL** |

## <u>TABLE OF CONTENTS</u>

**ARGUMENT** ....................................................................................................1

**I.   Arco Failed to Satisfy the Meet and Confer Requirement** ....................1

    A. Arco Failed to Discuss Document
    Production Timeline In Good Faith .......................................................2

    B. Arco Did Not Approach Negotiations
    Regarding Its Interrogatories in Good Faith ........................................5

**II.   There Is No Basis for Arco's
Arbitrary Document Production Deadline**...............................................7

    A. Arco Did Not Propose August 31
    During the Parties' Meet and Confer ...................................................8

    B. The Document Production Process
    in this Case is Particularly Arduous ....................................................8

    C. Arco Has Failed to Establish That It Is Entitled to Tax Returns ........12

**III. CFAC Properly Relied On Rule 33(D)
in Responding to Arco's Interrogatories** .................................................13

    A. Arco Has Failed to Establish That
    Reliance on Rule 33(d) Is Inadequate .................................................13

        1. The Burden of Responding to the
        Interrogatories Is Equal for CFAC and Arco .................................13

        2. Arco's Broad Interrogatories Effectively Seek to
        Require CFAC to State its Entire Theory of Liability ..................18

    B. To The Extent Arco Challenges
    Reliance on Rule 33(D), theInterrogatories
    Are Premature, Overbroad Contention Interrogatories......................22

**CONCLUSION**.................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Allergan, Inc.*, No. 14-cv-02004-DOC (KES),
  2016 U.S. Dist. LEXIS 192289 (C.D. Cal. Sept. 23, 2016) ........................ 20, 23

*Advocare Int'l, L.P. v. Scheckenbach*, No. C08-5332 RBL,
  2009 U.S. Dist. LEXIS 92385 (W.D. Wash. Sept. 24, 2009) .............................23

*Aliotti v. Vessel Senora*,
  217 F.R.D. 496 (N.D. Cal. 2003) .........................................................................12

*Cardoza v. Bloomin' Brands, Inc.*,
  141 F. Supp. 3d 1137 (D. Nev. 2015) ....................................................... 2, 6, 11

*Envtl. Transp. Sys. v. Ensco, Inc.*,
  969 F.2d 503 (7th Cir. 1992) ...............................................................................18

*Fed. Hous. Fin. Agency v. Royal Bank of Scot. Grp. PLC*,
  No.3:11CV1383(AWT),
  2014 U.S. Dist. LEXIS 200192 (D. Conn. May 14, 2014) .................................15

*Grouse River Outfitters, Ltd. v. Netsuite, Inc.*, No. 16-cv-02954-LB,
  2017 U.S. Dist. LEXIS 53273 (N.D. Cal. Apr. 6, 2017)....................................20

*In re Convergent Techs. Secs. Litig.*,
  108 F.R.D. 328 (N.D. Cal.1985) .................................................................... 2, 10

*In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS),
  2008 U.S. Dist. LEXIS 102815 (N.D. Cal. Dec. 11, 2008) ......................... 22, 23

*In re September 11th Liab. Ins. Coverage Cases*,
  243 F.R.D. 114 (S.D.N.Y. 2007).........................................................................12

*Jones v. Goldstein*,
  41 F.R.D. 271 (D. Md. 1966) ........................................................................ 18, 19

*Kaufman v. Am. Family Mut. Ins. Co.*, No. 05-cv-02311-WDM-MEH,
  2007 U.S. Dist. LEXIS 34848 (D. Colo. May 11, 2007) .............................. 20, 21

*Lucero v. Valdez*,
  240 F.R.D. 591 (D.N.M. 2007) ...........................................................................23

*Miles v. Shanghai Zhenhua Port of Mach. Co.*, No. C08-5743 FDB,
  2009 U.S. Dist. LEXIS 112183 (W.D. Wash. Nov. 17, 2009) ...........................23

*Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM,
  2019 U.S. Dist. LEXIS 90111 (E.D. Cal. May 28, 2019)....................................1

*Nat'l Jewish Health v. WebMD Health Servs. Grp.*,
  305 F.R.D. 247 (D. Colo. 2014).........................................................................17

*O'Connor v. Boeing N. Am., Inc.*,
  185 F.R.D. 272 (C.D. Cal. 1999) .................................................................. 17, 20

*Osborne v. Billings Clinic*, No. CV 14-126-BLG-SPW,
  2015 U.S. Dist. LEXIS 48363 (D. Mont. Apr. 13, 2015) ................................. 2, 6

*Palma v. Lake Waukomis Dev. Co.*,
  48 F.R.D. 366 (W.D. Mo. 1970) ........................................................................ 19

*Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*,
  111 F.R.D. 318 (D. Mass. 1983) ........................................................................ 21

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*,
  511 F.2d 225 (9th Cir. 1975) ............................................................................. 13

*SEC v. Elfindepan, SA*,
  206 F.R.D. 574 (M.D.N.C. 2002) ....................................................................... 17

*Shinde v. Nithyananda Found.*, No. ED CV 13-363-JGB (SPx),
  2014 U.S. Dist. LEXIS 195165 (C.D. Cal. Oct. 1, 2014) ..................................... 5

*TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14cv2021-W (BLM),
  2017 U.S. Dist. LEXIS 37373 (S.D. Cal. Mar. 15, 2017) ............................. 16, 21

*Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-1727,
  2017 U.S. Dist. LEXIS 109452 (E.D. La. July 13, 2017) ................................... 24

*Tri-Star Pictures, Inc. v. Unger*,
  171 F.R.D. 94 (S.D.N.Y. 1997) ............................................................................ 6

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
  235 F.R.D. 521 (D.D.C. 2006) ............................................................................. 6

*United States ex rel. Tyson v. Amerigroup Ill., Inc.*,
  230 F.R.D. 538 (N.D. Ill. 2005) ......................................................................... 24

*United States v. Renault, Inc.*,
  27 F.R.D. 23 (S.D.N.Y. 1960) ............................................................................ 19

**Statutes**

D. Mont. L.R. 26.3 ..................................................................................................... 1

Fed. R. Civ. P. 33 .............................................................................................. *passim*

Fed. R. Civ. P. 37 .............................................................................................. *passim*

**Treatises**

7 Moore's Federal Practice, Civil § 33.105 (2019) .......................................... 14

Wright, Miller & Marcus, Federal Practice & Procedure,
  Civil 2d, § 2174 ................................................................................................. 20

Plaintiff Columbia Falls Aluminum Company ("CFAC") respectfully submits this memorandum of law in opposition to the motion to compel (the "Motion") [ECF No. 52], filed by defendant Atlantic Richfield Company ("Arco")[1].

## **ARGUMENT**

### **I.    Arco Failed to Satisfy the Meet and Confer Requirement**

At the outset, the Court should deny the Motion because Arco failed to confer in good faith regarding the matters raised therein, as required by the Federal Rules of Civil Procedure.  Under Rule 37(a)(1), a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *9 (E.D. Cal. May 28, 2019) (quoting Fed. R. Civ. P. 37(a)(1)); *see also* D. Mont. L.R. 26.3(c)(1) ("The Court will deny any discovery motion unless the parties have conferred concerning all disputed issues before the motion is filed."); D. Mont. L.R. 26.3(c)(2)(B) (requiring moving party to certify as to meet and confer).

In order to satisfy their meet and confer obligation, "parties must treat the informal negotiation process as a substitute for, and not simply a formal

---

[1] Capitalized terms used but not defined in this memorandum are defined in CFAC's Complaint [ECF No. 1].

prerequisite to, judicial review of discovery disputes." *Osborne v. Billings Clinic*, No. CV 14-126-BLG-SPW, 2015 U.S. Dist. LEXIS 48363, at *3 (D. Mont. Apr. 13, 2015) (internal alterations, quotations, and citations omitted). As such, "[c]ounsel should strive to be cooperative, practical and sensible, and should seek judicial intervention 'only in extraordinary situations that implicate truly significant interests.'" *Cardoza v. Bloomin' Brands, Inc*., 141 F. Supp. 3d 1137, 1145 (D. Nev. 2015) (citations omitted); *see also In re Convergent Techs. Secs. Litig*., 108 F.R.D. 328, 331 (N.D. Cal. 1985) ("The whole system of Civil adjudication would be ground to a virtual halt if the courts were forced to intervene in even a modest percentage of discovery transactions. That fact should impose on counsel an acute sense of responsibility about how they handle discovery matters."). As set forth below, Arco did not make a sincere effort to resolve either its objections to CFAC's proposed document production timeline, or its demand for immediate responses to all of its interrogatories.

A.     Arco Failed to Discuss Document Production Timeline In Good Faith

As to document production, Arco's discussion of CFAC's so-called "unilateral production schedule" is highly misleading and does not reflect the position CFAC took regarding the production timeline in the parties' correspondence and during the parties meet and confer.

For example, Arco contends that CFAC stated "[i]t would <u>start</u> its production <u>on</u> July 31, 2019." (Motion at 3) (emphasis added). This is incorrect. In its Response to Arco's document requests, CFAC stated: "CFAC will make its first production of documents responsive to the Document Requests <u>by</u> July 31, 2019." [ECF No. 51-2]. And indeed, CFAC made its first production of documents a month earlier, on June 27, 2019. In addition, Arco claims that CFAC is "reserving the right to withhold . . . documents until only five weeks before the initial expert disclosure deadline" and that it "refus[es] to complete its production any sooner than December 31, 2019." Again, this does not accurately reflect CFAC's stated position as to the production timeline. In response to Arco's letter threatening to move to compel if CFAC did not produce documents responsive to <u>all</u> of its document requests within a week, CFAC stated, in an effort to compromise, that it was "willing to represent that it [would] complete its document production in response to Arco's requests by December 31, 2019, in order to permit sufficient time to conduct fact depositions." [ECF No. 51-4]. This statement is not a "refusal" to produce documents "any sooner than December 31, 2019," it is an initial counteroffer in response to Arco's patently unrealistic proffered production timeline — less than two months from the date of Arco's document requests, and eighteen days from the date of CFAC's response.

Significantly, during the parties' meet and confer, CFAC specifically asked Arco to propose an alternate date for completion in an attempt to reach a mutually-acceptable solution.  Arco did not provide one, nor has it ever suggested August 31, the date set forth in the Motion, as an alternative to CFAC's December 31 proposal.  Moreover, during the meet and confer, CFAC made other bids in an effort to alleviate Arco's concerns, including assuring Arco that it would make rolling productions as expeditiously as possible, and offering to complete its production of documents relating to the underlying environmental matters earlier than its production of documents relating to Arco's contractual defense, given that expert testimony will only address environmental issues.  CFAC also laid out the categories of documents it was planning to produce and its efforts to assemble them to date, and has already produced 12,211 documents to Arco.

CFAC never indicated that it is diametrically opposed to an earlier completion date, it merely made an initial suggestion as to what it believed was a reasonable deadline in light of the high volume of documents involved.  Arco was free to respond with a different suggestion, but it did not.  CFAC remains willing to discuss a realistic and mutually-agreeable document production schedule with Arco.[2]

---

[2] It bears noting that because Arco did not genuinely attempt in good faith to resolve this dispute but instead chose to file its Motion, CFAC was forced to divert time and resources from the actual discovery process itself in order to respond.

B.     Arco Did Not Approach Negotiations
       Regarding Its Interrogatories in Good Faith

Similarly, contrary to Arco's claim that CFAC "refuses to respond to

interrogatories," CFAC has never been categorically opposed to <u>ever</u> responding to

<u>any</u> interrogatories, but rather has taken the position that Arco's interrogatories as

drafted are substantially overbroad, and that the question of interrogatories should

be revisited upon the completion of fact discovery.  For example, in its letter,

CFAC stated that it was "amenable to meeting with Arco about responses to . . .

interrogatories upon the completion of document production, to the extent that the

documents are insufficient to establish the descriptions Arco is seeking."  [ECF

No. 51-4].  CFAC restated this offer during the parties' meet and confer.[3]  But

rather than entertain CFAC's good faith offer or provide a counter-offer, Arco only

reaffirmed its insistence on immediate answers to each and every of its broadly-

worded interrogatories.  "This is not a good faith attempt to confer and resolve the

---

Arco is demanding that CFAC produce voluminous documents within a highly
truncated timeframe, while simultaneously engaging in litigious conduct that
distracts from CFAC's efforts to comply with its requests.  This unnecessary
antagonism is precisely the sort of abusive discovery tactic the good faith
negotiation requirement is intended to eliminate.

[3] In addition, CFAC offered to permit Arco to examine the hard copy records it has
compiled to date at counsel's offices in New York.  Contrary to Arco's flatly
untrue that this offer was made "subject to CFAC's counsel's subsequent review to
determine which documents CFAC would actually produce," CFAC merely
requested that Arco (a) mark the documents they wanted scanned so that they
could be scanned and Bates-stamped in accordance with the parties' joint
discovery plan in order to keep track of the materials; and (b) preserve any
privilege that may attach to the documents.  Arco never responded to this offer.

dispute, but rather a demand that plaintiff alter its position or face a motion to compel[.]" *Shinde v. Nithyananda Found.*, No. ED CV 13-363-JGB (SPx), 2014 U.S. Dist. LEXIS 195165, at *6 (C.D. Cal. Oct. 1, 2014).  Nor has Arco ever meaningfully responded to CFAC's explanation that because it has no current employees with firsthand knowledge of the information sought, it would be required to review voluminous historic records in order to provide a response to the interrogatories, or its concern that responding to them as currently drafted at this stage of the proceedings would essentially require CFAC to establish its entire case through interrogatory responses alone.  Therefore, "the meet-and-confer process did not include meaningful discussion as to many of the specific objections that Defendants raised in response to the discovery now in dispute." *Cardoza*, 141 F. Supp. 3d at 1145-46 (citations omitted).  Such a "truncated discussion during the meet-and-confer process [i]s insufficient to meet the counsel's obligations to engage in a meaningful discussion as to each discovery dispute[.]" *Id.* at 1146.

Rule 37 "exist[s] for a reason.  Namely, the parties are required to meet and confer to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through promotion of informal, extra-judicial resolution of discovery disputes." *Osborne*, 2015 U.S. Dist. LEXIS 48363, at *3 (citations omitted); *see also, e.g.*, *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) ("It is a waste of

this Court's time and resources to adjudicate a dispute that could have been resolved by the parties themselves."); *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 100 (S.D.N.Y. 1997) (denying motion to compel for failure to meet and confer, and noting that "[d]isagreement [over discovery requests] is an obvious precursor to negotiated compromise, and thus, is a necessary component of the meet-and-confer prerequisite to bringing a motion to compel").  CFAC attempted to negotiate a compromise to Arco's requests, but Arco would not agree to anything other than immediate satisfaction of all of its document requests and interrogatories.  Arco's wholesale failure to make a good faith effort to resolve its issues with CFAC's responses to its discovery requests necessitates denial of the Motion.

## II.    There Is No Basis for Arco's Arbitrary Document Production Deadline

In any event, the Motion should be denied on the merits because Arco has failed to justify its demand that CFAC complete production by August 31, 2019.  The documents Arco has requested span over sixty-four years, and require the collection, scanning, and review of voluminous records, a process that necessarily involves significant costs and effort.  Moreover, as the current owner of the Site, CFAC bears a much greater burden of production than Arco. The arbitrary deadline Arco seeks to impose does not account for either the heavy task of

producing documents responsive to its requests, or for the parties' disparate obligations regarding document production.

A. Arco Did Not Propose August 31 During the Parties' Meet and Confer

Importantly, as noted above, Arco never proffered August 31 as a potential deadline during the meet-and-confer process, and therefore CFAC has not had the opportunity to negotiate in good faith with Arco regarding timing. Arco cannot in fairness decline to respond to CFAC's inquiry as to an alternative date for completion, and then nevertheless move to compel production by a particular date. Indeed, unlike CFAC's good faith offer to complete production by December 31, 2019, to grant Arco's Motion would impose an unfair "unilateral production timeline" on CFAC – the party that bears the brunt of the burden of production in this case as the current owner of the Site. This fact alone justifies denial of Arco's August 31 demand.

B. The Document Production Process
in this Case is Particularly Arduous

Moreover, Arco's demand that CFAC complete production in under three months from the date of its response – including conferring in good faith on the requests to which CFAC objected – is unreasonable in light of the uniquely length and burdensome document collection and production process in this case, which stems from the historic nature of the expansive materials Arco is seeking.

First, Arco alleges that because CFAC "produced thousands of documents in response to EPA's CERCLA 104(e) request" in 2014 and has "had possession, custody, and control of responsive documents for a long time," it should be required to complete all document production – including with respect to its contractual defenses – by August 31, 2019.  This statement is misleading as to CFAC's productions to date, as well as the overall scope of discovery in this case.  First, during the parties' meet and confer, CFAC represented to Arco that CFAC would complete its review and produce all documents that it submitted to EPA in 2014 promptly, and indeed completed production of those 12,211 documents in three document productions dated June 27, June 28, and July 3 – the same day Arco filed its Motion.

Furthermore, Arco's argument seems to assume that the only responsive documents to its extensive document requests are those that CFAC submitted to EPA in 2014.  That is not the case.  Arco's requests for production are extremely broad, and in order to respond, CFAC must scan, review, and produce substantial numbers of documents in addition to the 2014 EPA documents, the majority of which are hard copy files from the Site itself.  CFAC has currently assembled over seventy boxes of potentially relevant hard copy documents, the scanning and review of which is a highly expensive and time-consuming process – for example, scanning only half those documents is estimated to cost over $30,000.

Moreover, in order to locate certain documents, CFAC had to contact third-party

law firms that represented CFAC historically in various matters and therefore had

in their possession potentially responsive CFAC materials.  The documents CFAC

received from those law firms will require a preliminary manual review for

responsiveness to avoid unnecessary scanning expenses.  In addition to hard copy

materials, CFAC is collecting and reviewing electronically-stored information

relating to its current remedial efforts at the Site, which entails assembling and

reviewing materials from numerous custodians both at CFAC and at its consultants

and/or other attorneys.  CFAC is working diligently to finish this process and

produce responsive, non-privileged materials documents to Arco, expending

substantial time, costs, and resources in order to ensure it is completed as

expeditiously as possible.

        In this regard, Arco's argument that because CFAC "elected to bring

this case nearly a year ago" and "worked with [responsive] documents to craft the

factual allegations set forth in [the] Complaint," it should easily be able to

complete all production by August 31 is misplaced.  As courts have recognized,

"[d]iscovery is not now and never was free.  Discovery is expensive." *In re*

*Convergent Techs. Sec. Litig.*, 108 F.R.D. at 331.  While CFAC certainly worked

with certain responsive documents in crafting its complaint, it did not scan and

review everything responsive to Arco's requests prior to filing the Complaint.  Nor

was there any reason for CFAC to begin the expensive and time-consuming process of (1) scanning voluminous hard copy documents; (2) storing documents on its document review platform at a cost; and (3) reviewing the documents for responsiveness and privilege, before it was assured that the case would proceed to the discovery phase.

Rather, CFAC had ample reason to postpone these expenses in the event they ultimately proved to be unnecessary:  First, at the time CFAC filed its Complaint, the parties were engaged in settlement discussions, and CFAC in good faith hoped the parties would reach an agreement.  Second, until the parties finalized the joint discovery plan, CFAC could not know the format the production would take.  Finally, Arco indicated to CFAC early in the settlement discussions that it intended to either bifurcate discovery (a request it advanced to the Court) or seek out-of-court resolution of its contractual defense, and eventually moved for judgment on the pleadings with respect to that defense on February 15, 2019 – an issue only resolved in April.  Had the Court granted that motion, CFAC would obviously have had no reason to spend time and money scanning and reviewing documents.  Given its own consistent attempts to dispense with this case – whether amicably or judicial dismissal – Arco cannot expect that CFAC expend substantial expenses in anticipation of its expansive discovery demands.

"Discovery is supposed to proceed with minimal involvement of the Court." *Cardoza*, 141 F. Supp. 3d at 1145; *see also, e.g.*, *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) ("Discovery is run largely by attorneys, and the court and the judicial process depend upon honesty and fair dealing among attorneys.").  As it indicated to Arco during the parties' meet and confer, CFAC is working diligently to produce documents responsive to a large number of Arco's document requests on a rolling basis.  CFAC remains committed to (a) negotiating a mutually acceptable timeline for that production, and (b) reaching an agreement on the scope of Arco's remaining requests.  Yet Arco's blanket demand that CFAC produce "all documents responsive to its Requests for Production" by August 31 – a date it has not proposed to CFAC prior to filings its Motion – is unreasonable and unwarranted, and runs afoul the emphasis in Rule 37 on cooperation and good faith among counsel.

C.   Arco Has Failed to Establish That It Is Entitled to Tax Returns

Arco has also failed to establish that it is entitled to CFAC's tax returns.  The Ninth Circuit recognizes "'a public policy against unnecessary public disclosure [of tax returns] arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns.'" *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497 (N.D. Cal. 2003) (quoting  *Premium Serv.*

*Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975)).

"Accordingly, the Court may only order the production of plaintiff's tax returns if they are relevant and when there is a compelling need for them because the information sought is not otherwise available." *Id.* at 497-498.

Here, Arco has failed to establish a "compelling need" for all of CFAC's tax returns.  It's only proffered justification is that "the economic benefits CFAC has received and may yet receive from its operation of the Site—as evidenced in its tax returns—are relevant to its claim for CERCLA contribution." (Motion at 11).  However, information regarding any such possible hypothetical benefits are clearly available from other sources, such as CFAC's response to Interrogatory No. 6, and its production of documents in response to, for example, Document Request Nos. 17, 27 and 31.

## III.  CFAC Properly Relied On Rule 33(D) in Responding to Arco's Interrogatories

### A.   Arco Has Failed to Establish That Reliance on Rule 33(d) Is Inadequate

#### 1.   *The Burden of Responding to the Interrogatories Is Equal for CFAC and Arco*

The Motion should also be denied on the merits because CFAC properly relied on Rule 33(d) in responding to Interrogatories Nos. 3, 4, 5, 7, 8, 9, 10, and 11.  Under Rule 33(d), if the answer to an interrogatory may be determined by examining a party's business records, and if the burden of deriving the answer

would be substantially the same for either party, the responding party may answer by reference to such records.  *See* Fed. R. Civ. P. 33(d)(2); *see also* Fed. R. Civ. P. 33(d)(2) advisory committee's note to 1970 amendment (Rule 33(d)(2) "relat[es] especially to interrogatories which require a party to engage in burdensome or expensive research into his own business records in order to give an answer," and "gives the party an option to make the records available and place the burden of research on the party who seeks the information").[4]  Rule 33(d) was specifically enacted in order to shift the burden to the interrogating party:  "[t]he purpose of the option to produce business records is to place the burden of research on the party seeking the information, <u>instead of requiring the responding party to conduct a</u> <u>burdensome or expensive search of its own records</u>."  7 MOORE'S FEDERAL

---

[4] As a preliminary matter, to succeed on a motion "claiming an inappropriate use of Rule 33(d), . . . <u>the requesting party must make a prima facie showing that the</u> <u>use of Rule 33(d) is somehow inadequate</u>, whether because the information is not fully contained in the documents or because it is too difficult to extract."  7 MOORE'S FEDERAL PRACTICE - CIVIL § 33.105 (2019).  Arco has not met that burden.  Its Motion simply states in conclusory fashion that "CFAC's business records will not disclose the descriptions [Arco] seeks."  (Motion at 7).  However, it does not provide any basis for this statement.  In fact, Arco's requests for document production actually support CFAC's position that its business records will satisfy these Interrogatories.  Arco's Document Request No. 6, for example, seeks "all Documents relating to [CFAC's] use, investigation, management, closure, maintenance, and monitoring of Disposal areas at the Site," which would "include . . . documents relating to the type and quantity of waste placed in or around the Landfills, Ponds, or other Disposal areas and the date(s) such waste was placed in or around the Landfills, Ponds, or other Disposal areas."  Arco is thus effectively asking CFAC both to produce the business records that would answer Interrogatory No. 3 and asking CFAC to provide a written Interrogatory response detailing the information provided in those records.

PRACTICE, Civil § 33.105 (2019) (emphasis added); *see also, e.g.*, Fed. R. Civ. P. 33(d)(2) advisory committee's note to 1970 amendment (Rule 33(d) "places the burden of discovery upon its potential benefitee[.]")

An unequal burden exists where the responding party "has the answer to an interrogatory in the form of a compilation but responds to the interrogatory by producing and identifying business records, such that the receiving party must then compile the records to obtain the answer to the interrogatory." *Fed. Hous. Fin. Agency v. Royal Bank of Scot. Grp. PLC*, No. 3:11CV1383(AWT), 2014 U.S. Dist. LEXIS 200192, at *9 (D. Conn. May 14, 2014).  Such is not the case here: CFAC does not have the answer to Arco's broad interrogatories regarding its historic operations "in the form of a compilation."  As Arco acknowledges, Interrogatory Nos. 3, 4, 5, 8, 10, and 11 each seek detailed descriptions of corporate conduct and activities spanning over twenty four years – for example, to identify the types, amounts, and dates of all releases of hazardous substances over the course of CFAC's ownership of the Site, and to describe CFAC's historic waste management practices.  CFAC has no current employees with firsthand knowledge regarding all of CFAC and its predecessors' operations at the Site.  Therefore, in order to prepare a response, CFAC would be required to search through twenty-four years of operating materials dating back to 1985 and then prepare a summary for Arco based on its review of those materials.

In other words, in order to obtain the answers to Interrogatories Nos. 3, 4, 5, 8, 10, and 11, "one of the parties must undertake the task of compiling the information." *TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14cv2021-W (BLM), 2017 U.S. Dist. LEXIS 37373, at *25 (S.D. Cal. Mar. 15, 2017) (emphasis added). Nothing suggests this process would be any more burdensome for Arco than for CFAC. In fact, should CFAC be required to describe "[r]eleases occurring during [its] ownership of the Site of Hazardous Materials and/or Hazardous Substances," "[its] placement and management of waste generated in connection with operations at the Site," and "all actions [it] ha[s] taken or caused to be taken to prevent or mitigate the effects of alleged releases of Hazardous Materials or Hazardous Substances" other than by reference to documents, Arco should equally be required to "describe" its own releases, waste management, and actions taken to mitigate effects of releases – prior to reviewing historic records from its own thirty years of operations at the Site.

Contrary to Arco's assertion, production of CFAC's business records will amply describe the information Arco seeks, since they will reflect CFAC's day-to-day operations at the Site, as well as its remedial efforts since operations ceased. For example, business records can describe CFAC's "arrangements for the Disposal of wastes generated in connection with operations at the Site to offsite locations" in the form of intercompany memoranda, shipping documents, and other

commercial agreements.  (Interrogatory No. 5).  Indeed, CFAC's Complaint itself

included numerous business records as exhibits, which provide significant details

regarding matters raised by the Interrogatories at issue.  For example, the

Complaint indicates that CFAC's predecessor "disposed of SPL on-site from 1985

to 1990 in a landfill lined with a thick clay pad" and "capped and revegetated that

landfill" in 1990, after which CFAC "shipped its SPL off-site to a hazardous

wastes landfill."  (Complaint ¶¶ 52-53).

Arco argues that "directing an interrogating party to a collection of

documents is not a proper substitute for actually describing the conduct or

circumstances that are the subject of the interrogatory."  (Motion at 7).  To the

contrary, Rule 33 was actually designed to address broadly worded interrogatories

responding to which would require the producing party to search through

voluminous records.  *See Nat'l Jewish Health v. WebMD Health Servs. Grp.*, 305

F.R.D. 247, 255 (D. Colo. 2014) (Rule 33(d) is "intended to be used when

interrogatories make broad inquiries and numerous documents must be consulted

to ascertain facts.") (citing *SEC v. Elfindepan, SA*, 206 F.R.D. 574, 577 (M.D.N.C.

2002)); *see also O'Connor v. Boeing N. Am., Inc*., 185 F.R.D. 272, 277 (C.D. Cal.

1999) ("The nature of the inquiries made by plaintiffs in their interrogatories was

sufficiently broad for defendants to answer under Rule 33(d).").

2.      *Arco's Broad Interrogatories Effectively Seek to*
        *Require CFAC to State its Entire Theory of Liability*

Indeed, to require CFAC to respond other than by reference to

documents would force CFAC "to state its legal positions with regard to the entire

case." *Jones v. Goldstein*, 41 F.R.D. 271, 273 (D. Md. 1966). As Arco

acknowledges in its Motion, the Interrogatories all seek to establish facts regarding

the "core factual issue[s] in the case:" namely, the parties' respective responsibility

for the release and threatened releases of hazardous substances at the Site. (Motion

at 5). Therefore, in order to respond to the Interrogatories at issue, CFAC would

effectively have to establish not only its own contribution claim and defenses to

Arco's counterclaim, but also Arco's own case on its counterclaim and defenses.

For example, to require CFAC to describe "[r]eleases occurring during [its]

ownership of the Site of Hazardous Materials and/or Hazardous Substances," and

"all actions [it has] taken or caused to be taken to prevent or mitigate the effects of

alleged releases" at the Site would essentially require CFAC to establish two of the

key factors courts consider when allocating responsibility under CERCLA. *See*

*Envtl. Transp. Sys. v. Ensco, Inc.*, 969 F.2d 503, 508 (7th Cir. 1992) (in allocating

responsibility under CERCLA, courts consider "the degree of involvement by the

parties in the generation . . . of the hazardous waste," "the degree of care exercised

. . . with respect to the hazardous waste concerned," and "the degree of cooperation

by the parties . . . to prevent any harm to the public health or the environment").

"[T]he rule clearly is that a party may not be required by interrogatories to submit every item of evidence he expects to produce on trial of the case." *United States v. Renault, Inc.*, 27 F.R.D. 23, 27 (S.D.N.Y. 1960).

Rather,

> When properly used, disclosure is a valuable aid in narrowing and clarifying issues . . . , but to permit a type of disclosure which elicits every minute detail of evidence would result in extreme hardship and confusion. . . . . The proceedings would be long delayed pending the arduous preparation of answers which would make up a complete trial record before the actual trial had even begun. The interrogated party would work at great peril in compiling his huge volume of answers, for omission of any item of evidence, through innocent oversight or otherwise, would subject him to the possible risk of exclusion of the omitted evidence at trial. . . . Even after furnishing answers, the interrogated party would need to be continually on guard to supplement his answers with every shred of new evidence garnered. Obviously, then, discovery must be kept within bounds to assure that interrogating parties do not employ practices which would defeat the public interest in the orderly and expeditious administration of justice.

*Id.*; *see also, e.g.*, *Palma v. Lake Waukomis Dev. Co.*, 48 F.R.D. 366, 370 (W.D. Mo. 1970) ("[T]he fact that a party may make a detailed inquiry into the evidentiary facts does not mean, of course, that he may force the opposing party to put on a dress rehearsal of the trial[.]") (quoting 4 Moore's Federal Practice, § 3312).[5]

---

[5] While "[a] party may be required factually to particularize allegations made in his pleadings," *Palma*, 48 F.R.D. at 370 (quoting *Jones*, 41 F.R.D. at 273). CFAC's

In light of their broad nature and the extensive investigation that responding would require, Arco's Interrogatories fall precisely within the scope of Rule 33.  "A party cannot ordinarily be forced to prepare its opponent's case. Consequently, interrogatories that require a party to make extensive investigations, research or compilation or evaluation of data for the opposing party are in many circumstances improper."  *Kaufman v. Am. Family Mut. Ins. Co.*, No. 05-cv-02311-WDM-MEH, 2007 U.S. Dist. LEXIS 34848, at *4 (D. Colo. May 11, 2007) (quoting WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE & PROCEDURE, Civil 2d, § 2174); *see also, e.g.*, *O'Connor*, 185 F.R.D. at 277 ("[D]ue to the complex nature of the pending class action, written interrogatories to the defendants are not likely to be particularly helpful or useful to plaintiffs and, more likely than not, will only lead to unnecessary discovery disputes.").  Rather, if an interrogatory "would require investigation or research, the answering party may comply with the

---

Complaint already states its allegations regarding its operation of the Site with a high degree of particularity.  (*See* Complaint ¶¶ 45-58 (describing CFAC's waste management practices, aluminum production volumes, and manufacturing process).  Because the Complaint already "gives abundantly detailed specifications of the underlying facts and advances established legal theories[,] [t]he proposed interrogatories . . . effectively ask [CFAC] to repeat its allegations. There is little value in that."  *Grouse River Outfitters, Ltd. v. Netsuite, Inc.*, No. 16-cv-02954-LB, 2017 U.S. Dist. LEXIS 53273, at *4 (N.D. Cal. Apr. 6, 2017) (quotations removed); *see also, e.g.*, *In re Allergan, Inc.*, No. 14-cv-02004-DOC (KES), 2016 U.S. Dist. LEXIS 192289, at *19 (C.D. Cal. Sept. 23, 2016) ('[G]iven the infancy of discovery, it is entirely appropriate to defer compelling further response to this interrogatory, especially considering the detail articulated in Plaintiffs' Complaint.").

interrogatory . . . pursuant to the procedure set forth in Fed. R. Civ. Pro. 33(d)."

*Kaufman*, 2007 U.S. Dist. LEXIS 34848, at *4-5 (quotations and citations

omitted).

        Just like Arco, CFAC would be required to look through voluminous

historic records in order to prepare a detailed response to matters that essentially

form the basis for its claims and Arco's defenses.  Therefore, Rule 33(d) requires

that Arco, as the interrogating party, should bear the burden of compiling the

information it seeks.  *See, e.g.*, *Petroleum Ins. Agency, Inc. v. Hartford Accident &*

*Indem. Co*., 111 F.R.D. 318, 320 (D. Mass. 1983) ("The bottom line, as I see it, is

that the plaintiffs want this discovery but do not want to expend the effort and

expense in procuring it. But the stated purpose of [Rule 33(d)] is to require the

party seeking the discovery to expend the effort and expense to procure it."

(emphasis removed)).[6]

---

[6] Arco's argument that CFAC's reliance on Rule 33(d) is improper because "CFAC neither provided nor specified the business records from which [Arco]may derive the respective answers" is misplaced.  (Motion at 5).  At this stage in the litigation, when CFAC is still in the process of producing documents, CFAC can properly rely on Rule 33(d), and later supplement its response by references to categories of documents as such documents are produced.  *See, e.g., TetraVue, Inc.*, 2017 U.S. Dist. LEXIS 37373, at *26 (allowing party to rely on Rule 33(d) in response to interrogatories, but requiring party to supplement response as additional documents were produced).  As noted, both Arco's interrogatories and its document request are all extremely broad and touch upon core issues in this case, which places CFAC in a Catch-22 situation:  it cannot respond to expansive interrogatories that require review of voluminous business records other than by reference to Rule 33, but it cannot produce those records prior to reviewing them.  CFAC is working in

B.   To The Extent Arco Challenges Reliance on Rule 33(D), the
<u>Interrogatories Are Premature, Overbroad Contention Interrogatories</u>

Arco also argues that the Interrogatories are not "contention

interrogatories" because they "do not ask what CFAC 'contends' or otherwise

require CFAC to state all facts on which it bases a position." (Motion at 8).  While

Arco's Interrogatories may not be phrased as traditional contention interrogatories,

they nevertheless purport to require CFAC to state facts on which it bases its views

regarding the core issues in this case:  responsibility for and allocation of liability

for environmental contamination at the Site.  In other words, the Interrogatories

"seek answers to two of the major issues in the case[.]"  *In re eBay Seller Antitrust*

*Litig.*, No. C 07-1882 JF (RS), 2008 U.S. Dist. LEXIS 102815, at *6 (N.D. Cal.

Dec. 11, 2008).  Therefore, any response other than pursuant to Rule 33(d) would

not only be highly burdensome, it would be premature at this juncture.

"Numerous federal courts have held that . . . interrogatories which

'systematically track all of the allegations in an opposing party's pleadings, and

that ask for each and every fact and application of law to fact that supports the

party's allegations are an abuse of the discovery process because they are overly

broad and unduly burdensome.'"  *Advocare Int'l, L.P. v. Scheckenbach*, No. C08-

---

good faith to review and produce substantial volumes of documents, and upon
further conferral with Arco regarding the scope of its interrogatories, will
supplement its interrogatory responses by references to Bates-numbered
documents.

5332 RBL, 2009 U.S. Dist. LEXIS 92385, at *4 (W.D. Wash. Sept. 24, 2009)

(quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)).  This is

"especially true in the early stages of discovery."  *Miles v. Shanghai Zhenhua Port*

*of Mach. Co.*, No. C08-5743 FDB, 2009 U.S. Dist. LEXIS 112183, at *3-4 (W.D.

Wash. Nov. 17, 2009).  Here, Interrogatories Nos. 3, 4, 5, 7, 8, 9, 10, and 11 each

track CFAC's Complaint not only by reference to terms as defined therein, but

indeed by specific references to allegations in particular paragraphs.  Thus, they

are overly broad and on their face.

Moreover, "[c]ourts using their Rule 33(a)(2) discretion generally

disfavor contention interrogatories asked before discovery is undertaken."  *In re*

*eBay Seller Antitrust Litig.*, 2008 U.S. Dist. LEXIS 102815, at *3; *see also, e.g.*, *In*

*re Allergan, Inc.*, 2016 U.S. Dist. LEXIS 192289, at *19 ("[G]iven the infancy of

discovery, it is entirely appropriate to defer compelling further response to this

interrogatory, especially considering the detail articulated in Plaintiffs'

Complaint.").  As one court explained:

> [T]here is . . . unfairness of requiring a party to
> prematurely articulate theories which have not yet been
> fully developed.  In addition, a lawyer's unwillingness to
> commit to a position without an adequately developed
> record will likely lead to vague, ambiguous responses,
> which are effectively useless.  Moreover, in cases where
> the parties anticipate the production of an expert report
> which will touch on the very contentions at issue, the
> Court should normally delay contention discovery until

after the expert reports have been served, which may then render moot any further contention discovery.

*Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277 Section: "A" (4), 2017 U.S. Dist. LEXIS 109452, at *6-7 (E.D. La. July 13, 2017) (citations omitted).[7]

Arco cannot have it both ways.  It cannot argue that Rule 33(d) is inapplicable because the Interrogatories require CFAC to "describ[e] the conduct" regarding key issues in this case, (Motion at 7), while simultaneously demanding that CFAC spell out its entire theory of liability and defenses right at the outset of discovery.  During the parties' meet and confer, CFAC offered to revisit the interrogatories upon the completion of document production, and to confer with Arco in an attempt to narrow the scope at that juncture.  Arco instead chose to file

---

[7] Indeed, Arco's Interrogatories seek information regarding issues that, according to the parties' joint discovery plan [ECF No. 37], will be the subject of expert testimony, such as mitigation of hazardous releases, causation of contamination at the Site, and the scope of response costs.  For example, Interrogatory No. 10 seeks information regarding responsibility for "elevated cyanide or fluoride concentrations in soil, groundwater, or surface water at the Site" – which is clearly a subject of expert testimony.  Arco cannot subvert the case management schedule by seeking responses to interrogatories that will necessarily require expert testimony.  "Complex cases such as this one must have enforceable discovery deadlines. . . . Without them, there would be no end to litigation, and without them there could not be the necessary expedition and coordination of a highly complex process. The parties had a right to expect that having been set, those deadlines will be honored."  *United States ex rel. Tyson v. Amerigroup Ill., Inc*., 230 F.R.D. 538, 545 (N.D. Ill. 2005) (citations removed).  CFAC was "was entitled to rely on the discovery schedule and assume it would not have to" establish its entire theory of liability until the completion of expert discovery.  *See id.*

its Motion.  CFAC's reliance on Rule 33(d) is entirely appropriate, and to the

extent Arco prefers written responses, it must be willing to compromise as to

timing and scope.

## **<u>CONCLUSION</u>**

For the reasons stated above, CFAC respectfully requests that this

Court deny Arco's Motion.


Dated this 16th day of July, 2019

By  */s/ W. John Tietz*

BROWNING, KALECZYC, BERRY & HOVEN, P.C.
  W. John Tietz
800 N. Last Chance Gulch, Suite 101
P.O. Box 1697
Helena, Montana 59624-1697
Tel:  (406) 443-6820
Fax:  (406) 443-6883

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
  Eliot Lauer (*pro hac vice*)
  Sylvi Sareva (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Plaintiff*
*Columbia Falls Aluminum Company, LLC*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with all requirements of the United States District Court for the District of Montana, Local Rule 7.1(d)(2), including all formatting requirements set forth in those rules.  Specifically, the undersigned certifies that:

This brief complies with D. Mont. L.R. 7.1(d)(2)(A) because it contains 6123 words.

This brief complies with D. Mont. L.R. 7.1(d)(2)(C) because it contains a table of contents and a table of authorities.  There are no exhibits to the brief, so it does not contain an exhibit index.

*/s/ W. John Tietz*