Randy J. Cox
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
Facsimile: (406) 549-6804
rcox@boonekarlberg.com

Jonathan W. Rauchway (Admitted *Pro Hac Vice*)
Adam S. Cohen (Admitted *Pro Hac Vice*)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Facsimile: (303) 893-1379
Jon.Rauchway@dgslaw.com
Adam.Cohen@dgslaw.com

*Attorneys for Defendant
Atlantic Richfield Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| COLUMBIA FALLS ALUMINUM COMPANY, LLC<br><br>Plaintiff,<br><br>- against -<br><br>ATLANTIC RICHFIELD COMPANY<br><br>Defendant. | Case No. CV 18-131-M-DWM<br><br>**DEFENDANT ATLANTIC RICHFIELD COMPANY'S REPLY IN SUPPORT OF MOTION TO COMPEL** |

Defendant Atlantic Richfield Company ("Atlantic Richfield") files this Reply in support of its Motion to Compel ("Motion") responses to its first set of discovery requests to Plaintiff Columbia Falls Aluminum Company, LLC ("CFAC"). In its Brief in Opposition to the Motion ("Opposition"), CFAC argues that, rather than timely providing Atlantic Richfield the discovery to which is entitled, CFAC instead may take up to eight months after service of Atlantic Richfield's initial discovery request to produce its responsive documents, after which it will consider whether to answer the interrogatories in that discovery request. CFAC's preferred approach to discovery does not comply with the Federal Rules of Civil Procedure.

## ARGUMENT

### I. Atlantic Richfield Conferred in Good Faith.

CFAC cannot avoid its discovery obligations by complaining that Atlantic Richfield inadequately conferred. In all of CFAC's cases where the conferral requirement was not met (Opp. at 1-2, 6-7), the parties either had no live conferral (either by telephone or in person) or did not confer at all about the particular disputes at issue. The parties engaged in substantive conferral here. Atlantic Richfield initially sent a five-page letter to CFAC detailing the deficiencies of its discovery responses, to which CFAC responded in writing. The parties then conferred by telephone for over an hour. During that telephone call, CFAC's

counsel made no commitment as to when it would produce documents beyond that it could complete its production by December 31, 2019. CFAC also insisted that it need not respond to Atlantic Richfield's interrogatories until after its documents were produced (i.e., until January 2020). In light of CFAC's refusal to commit to providing the information Atlantic Richfield seeks in discovery in a timely manner, Atlantic Richfield sought this Court's intervention.

Atlantic Richfield's Motion also accurately stated CFAC's positions. As to the interrogatories, Atlantic Richfield represented that CFAC only agreed to amend one interrogatory response (an amendment it has not yet made). Mot. at 3. CFAC still maintains that "the question of interrogatories should be revisited upon the completion of fact discovery." Opp. at 5. Contrary to the Rules, CFAC apparently does not view interrogatories as a tool to be used *during* fact discovery. As to documents, while CFAC now characterizes its December 31, 2019 production deadline as an "initial counteroffer," or "suggestion," it offers no earlier date by which it will actually complete production of its documents. *See* Opp. at 3, 4.

## II. CFAC Must Respond to Atlantic Richfield's Interrogatories.

### A. CFAC Cannot Rely on Rule 33(d) Without Also Producing and Specifying Responsive Documents.

CFAC argues that Atlantic Richfield, as the requesting party, has a burden to show that CFAC's use of Rule 33(d) is "somehow inadequate, whether because the information [Atlantic Richfield seeks] is not fully contained in the documents or

because it is too difficult to extract." Opp. at 14 n.4 (quoting Moore's Federal Practice). But Atlantic Richfield cannot tell whether the information it seeks is actually contained in CFAC's documents because CFAC has not produced them.[1] Thus the Court should give no credence to CFAC's repeated assurances that these documents will be sufficient.

CFAC provides no authority for the novel idea that it can rely on Rule 33(d) without providing *any* of the documents that purportedly will contain its responsive answers. In *TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14CV2021-W (BLM), 2017 WL 1008788, at *9 (S.D. Cal. Mar. 15, 2017) (cited in Opp. at 21 n.6), the only authority CFAC cites for this point, the responding party had already

---

[1] Prior to July 29, 2019 (the day before this Reply brief was due), CFAC had not designated any of the documents it produced as containing information responsive to Atlantic Richfield's interrogatories under Rule 33(d). On July 29, 2019, CFAC counsel transmitted a letter describing a "fourth production" of an unspecified number of documents (comprising 2,923 pages), which Atlantic Richfield counsel would receive the following day (the day this Reply brief was due). The letter states the documents were "identified consistent with, *inter alia*, Document Requests 11, 21, 29, and 31…." CFAC's latest correspondence does not cure the deficiencies in its discovery responses. <u>First</u>, the vague reference to "*inter alia*" four document requests provides no help in identifying which of the newly produced documents are responsive to a particular document request or interrogatory. <u>Second</u>, the reference only pertains to this most recent limited production, and not to the 12,211 documents that CFAC produced earlier. <u>Third</u>, of the four document requests identified in CFAC's letter, only one of them (No. 21) was cross-referenced in CFAC's Interrogatory responses as a source of responsive information. <u>Fourth</u>, CFAC's letter does not identify which of the documents in its fourth production correspond to that one cross-referenced document request.

provided documents and "specific references" to those documents pursuant to Rule 33(d). When the court compelled production of more documents, it also ordered the responding party to supplement its interrogatory responses with these new documents as needed. *Id.* Neither *TetraVue*—nor any other authority—supports the proposition that a responding party may invoke Rule 33(d) when it has not produced a single referenced document.

Even if CFAC's use of Rule 33(d) were appropriate despite its failure to produce, CFAC must still be ordered to amend its responses to specify which *particular* documents contain the responsive information. Appropriate Rule 33(d) responses "may not simply refer generically to past or future production of documents." *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCX), 2008 WL 11334030, at *7 (C.D. Cal. Mar. 17, 2008) (quotation omitted). Instead, they "must identify . . . *specifically which documents contain the answer.*" *Id.* (emphasis in original). In its Opposition, CFAC fails to justify its vague reference in its interrogatory responses to documents produced, "for example," in response to particular RFPs. *See SEC v. Elfindepan*, 206 F.R.D. 574, 576 (M.D.N.C. 2002) ("Document dumps or vague references to documents

do not suffice.") (cited in Opp. at 17). These vague responses do not satisfy Rule 33(d).[2]

### B. CFAC Must Answer Interrogatories Before the End of Discovery.

As CFAC's own cases show, Atlantic Richfield is permitted to inquire into the facts underlying the allegations in CFAC's Complaint, and it need not wait until the close of fact discovery to do so. "A party may be required factually to particularize allegations made in [its] pleadings." *Jones v. Goldstein*, 41 F.R.D. 271, 273 (D. Md. 1966) (cited in Opp. at 18). Atlantic Richfield's interrogatories are precisely the sort of factual inquiries that can and should be answered early. *See, e.g.*, *In re Allergan, Inc. Sec. Litig.*, No. 14CV02004DOCKES, 2016 WL 10719393, at *3 (C.D. Cal. Sept. 23, 2016) (cited in Opp. at 20 n.5) ("[S]traightforward 'factual' contention interrogatories" should be answered earlier than inquiries into a party's "theory of the case.").[3]

Nor do Atlantic Richfield's interrogatories "systemically track" CFAC's Complaint, as CFAC asserts (Opp. at 22), or request all facts and law supporting

---

[2] The same is true for CFAC's July 29, 2019 letter, which states that the documents in CFAC's fourth production were "identified consistent with, *inter alia*, Document Requests No. 11, 21, 29, and 31," as discussed in footnote 1, *supra*.
[3] Atlantic Richfield's interrogatories are not "contention" interrogatories as CFAC claims. If they were, however (as explained in the Motion) Rule 33(d) would be particularly inappropriate. *See Elfindepan*, 206 F.R.D. at 576 ("[D]ocuments themselves rarely, if ever, reveal contentions of fact or law. A party reveals contentions.").

each allegation such that they "effectively ask [CFAC] to repeat its allegations." *See* Opp. at 19-20 n.5. To the extent the interrogatories reference particular allegations in the Complaint at all, they inquire as to basic underlying facts that CFAC must possess to have filed its Complaint in good faith. For instance, Interrogatory No. 7 asks CFAC to "[d]escribe all 'response costs' that [CFAC] allege[s] in paragraphs 74 and 119 of the Complaint," it incurred at the Site. CFAC seeks contribution from Atlantic Richfield for its response costs to date, and therefore CFAC should be readily able to answer an interrogatory asking for a description of those costs.

### III. CFAC Must be Ordered to Produce Documents Before December 2019.

Atlantic Richfield served Requests for Production on CFAC in May 2019. CFAC does not argue in its Opposition that it need not respond because these requests are overbroad, disproportionate to the needs of this case, or otherwise seek irrelevant information. Instead, CFAC says it will produce responsive documents, but contends it is entitled to decide *when* it will do so. Contrary to CFAC's approach, when responding to document requests, "[i]t is improper to state that production will be made at some unspecified time in the future; such a response is treated as a failure to respond." 7 Moore's Federal Practice - Civil § 34.13[2][a] (2019). CFAC gives itself until December 31, 2019 to produce documents, a full eight months after receiving Atlantic Richfield's requests. CFAC cannot be

permitted to game discovery in this way, such that Atlantic Richfield could be denied responsive documents until a mere five weeks before its expert witness disclosures are due, and four months before the end of a thirteen-month discovery period. Instead, CFAC must produce its documents within a reasonable time under the Court's discovery schedule, no later than August 31, 2019.[4]

None of CFAC's purported justifications for its delay are persuasive. CFAC elected to bring this suit a year ago in July 2018. Apparently, it either has done nothing more to marshal the documents to support its claims or it seeks to preserve its ability to withhold such documents until the last minute. CFAC's complaint that producing these documents will require it to spend money scanning, processing, and reviewing them is no excuse—bringing a lawsuit costs money, and the amounts CFAC complains of ($30,000, Opp. at 9), pale in comparison to the liability CFAC seeks to assign Atlantic Richfield in this case. And it is not an excuse that CFAC thought the case might be dismissed, might settle, or that discovery would proceed on a slower schedule than the one the Court entered. *See* Opp. at 11. Nor can CFAC avoid its obligation to respond to discovery because it

---

[4] CFAC makes much of its recent production of "12,211 documents to Arco," Opp. at 4, all of which it produced after it was informed Atlantic Richfield would file this Motion. CFAC produced these same documents to EPA in 2014, presumably after performing a privilege review. CFAC should have been ready to produce these documents when it filed this lawsuit. Regardless, the parties agree that CFAC must produce many more documents than those it gave to EPA back in 2014. *See* Opp. at 9.

has no current employees with firsthand knowledge. *See, e.g.*, *Bus. Payment Sys., LLC v. Nat'l Processing Co.*, No. 3:10-CV-669-CRS, 2015 WL 13548456, at *2 (W.D. Ky. Mar. 17, 2015) (Plaintiff who "ceased doing business more than five years ago and ha[d] no current employees," was not relieved of obligation to produce documents and respond to interrogatories). Although CFAC "is no longer doing business, [] its officers have moved on," and its documents may be "stored at widely scattered locations," it nonetheless "elected to pursue relief against [Atlantic Richfield], and as such, [it is] obligated to honor [its] discovery obligations," or withdraw its case. *See id.* at *4. CFAC's lack of preparation and diligence should not prejudice Atlantic Richfield. If CFAC is not prepared to prosecute its claims, it can voluntarily dismiss them. Otherwise, it must comply with the Federal Rules of Civil Procedure and the Court's discovery schedule.

### IV. CFAC Must Produce its Tax Returns.

CFAC admits the relevance of its tax returns, arguing only that Atlantic Richfield should not receive them because it has not shown a "compelling need." Opp. at 13. "Tax returns are generally discoverable where necessary in private civil litigation." *Kelley v. Billings Clinic*, No. CV 12-74-BLG-RFC-CSO, 2013 WL 1414442, at *6 (D. Mont. Apr. 8, 2013). Where the party seeking tax returns shows their relevance, "the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable." *Id.* at *7.

Here, CFAC argues that Atlantic Richfield may obtain the same data from other information CFAC will provide in discovery. Opp. at 13. Of course, CFAC has not yet provided that information, thus failing to meet its burden of showing it is "readily obtainable." *See Kelley*, 2013 WL 1414442, at *6. Moreover, it is not clear that whatever CFAC may eventually produce in response to the discovery requests listed in the Opposition (at 13)[5] will be sufficient. While the documents produced in response to these requests might (in theory) reveal some of the same information that would be reported on a tax return, CFAC's tax returns will also include a full statement of its profits and expenses that will be broader than these discrete categories. This information will show the economic benefits CFAC has received from its operation of the Site, one of several factors relevant for equitable allocation in a CERCLA contribution case. As a result, CFAC must produce its tax returns.

## **CONCLUSION**

The Court should order CFAC to properly respond to Atlantic Richfield's Interrogatories and to timely produce all documents responsive to its Requests for Production, including the requested tax returns, no later than August 31, 2019.

---

[5] Interrogatory No. 6 asks about CFAC's efforts to sell the Site, RFP No. 17 asks for appraisals or assessment of the Site's property value, RFP No. 27 asks for financial records related to the expenses of remedial efforts, and RFP No. 31 asks for documentation of investigation activities and remedial actions at the Site.

-11-

Dated:  July 30, 2019	*/s/ Jonathan W. Rauchway*
	Jonathan W. Rauchway
	DAVIS GRAHAM & STUBBS LLP
	*Attorney for Defendant*
	*Atlantic Richfield Company*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with all requirements of D. Mont. L.R. 7.1(d)(2), including all formatting requirements set forth in those rules. Specifically, the undersigned certifies that:

This brief complies with D. Mont. L.R. 7.1(d)(2)(C) because it is under 4,000 words, and thus does not contain a table of contents and a table of authorities. There are no exhibits to the reply, so it does not contain an exhibit index.

*/s/ Jonathan W. Rauchway*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of July, 2019, a true and correct copy of the foregoing **DEFENDANT ATLANTIC RICHFIELD COMPANY'S REPLY IN SUPPORT OF MOTION TO COMPEL** was served via ECF to the following parties:

W. John Tietz
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
800 N. Last Chance Gulch, Suite 101
P. O. Box 1697
Helena, MT 59624

Eliot Lauer
Sylvi Sareva
CURTIS, MALLET-PREVOST, COLD & MORSLE LLP
101 Park Avenue
New York, New York 10178

*s/ Jonathan W. Rauchway*