IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| COLUMBIA FALLS ALUMINUM COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ATLANTIC RICHFIELD COMPANY,<br><br>Defendant. | CV 18–131–M–DWM<br><br>OPINION<br>and ORDER |

This action arises out of a dispute between Plaintiff Columbia Falls Aluminum Company, LLC ("CFAC") and Defendant Atlantic Richfield Company ("Arco") over the parties' respective environmental liabilities at an aluminum smelter in Columbia Falls, Montana ("the Site"). CFAC sued under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and its state analog (the Montana Comprehensive Environmental Cleanup and Responsibility Act, or "CECRA"), seeking cost recovery and contribution for its liability as the current owner and operator of the Site. (Doc. 1.) Arco counterclaimed, (Doc. 23), and now seeks to exclude the testimony of two of CFAC's experts, (Doc. 81), and partial summary judgment on CFAC's claims, (Doc. 83). This Order addresses Arco's motion to exclude.

1

ANALYSIS

CFAC seeks to introduce the testimony of seven expert witnesses at trial. Arco moves to exclude the expert testimony of David Batson entirely as improper legal opinion and William Muno to the extent it concerns documents whose consideration was not timely disclosed. (Doc. 81.) These are addressed in turn.

I.  **Batson**

Both parties have disclosed experts proposing methodologies to allocate responsibility between them for the costs of remediation. Relevant here, CFAC disclosed attorney David Batson to opine on this matter. (Doc. 82-1 at 5.) Batson has spent the last forty years working as an "attorney, environmental allocator and mediator." (*Id.*) Working both for the EPA and then in the private sector, Batson has provided mediation and allocation services to facilitate settlements among groups of potentially responsible parties. (*Id.*) He has served as an allocation consultant and mediator at over 90 hazardous waste sites across the country. (*Id.*)

Mr. Batson has provided four expert reports: (1) February 14, 2020 initial report, (Doc. 82-1); (2) March 16, 2020 rebuttal report, (Doc. 82-2); (3) April 27, 2020 rebuttal report, (Doc. 82-3); and (4) June 11, 2020 supplemental report, (Doc. 82-4). His initial report provides a Site history, (Doc. 82-1 at 8–9); a discussion of the aluminum reduction process and its resulting waste streams, (*id.* at 9–11); and then a thirty-five-page discussion of his allocation methodology and framework,

(*id.* at 11–44). Ultimately, he analyzes the parties' historical activities and operation of the Site "that created the need for remediation in order to establish a 'baseline allocation,' which [he] then adjusted as deemed appropriate through consideration of additional equitable allocation factors." (*Id.* at 14.) These factors—also known as the "Gore" factors—include:

> 1. The ability of the party to demonstrate that its contribution to a discharge, release or disposal of a hazardous substance can be distinguished;
> 2. The amount of the hazardous substances involved;
> 3. The degree of the toxicity of the hazardous substances involved;
> 4. The degree of involvement by the party in the generation, transportation, treatment, storage, or disposal of the hazardous substance;
> 5. The degree of care exercised by the party with respect to the hazardous substance concerned, taking into account the characteristics of such hazardous substance; and
> 6. The degree of cooperation by the party with federal, state, or local officials to prevent any harm to the public health or the environment.

(*Id.* at 15.)

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if, among other things, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."[1]

---

[1] Courts have a duty to ensure expert testimony admitted under this rule is "both relevant and reliable." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). In the context of a bench trial, however, the Court's usual

3

According to Arco, Batson improperly "relies on his interpretation of case law at every step of his process." (Doc. 82 at 4.)

While it is true that experts may not simply explain the law or how to apply it, *Nationwide Trans. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008), and that equitable allocation in a CERLCA contribution action is within the discretion of the Court, 42 U.S.C. § 9613(f), "qualified experts may offer opinions on *how* to apply qualitative and quantitative data to determine the ultimate decisions in [a] case." *N. Sts. Power Co. v. City of Ashland, Wis.*, 2015 WL 1745880, at *5 (W.D. Wisc. Apr. 16, 2015). "Courts routinely admit the testimony of allocation experts in CERCLA contribution cases and are free to ignore or use that testimony to the extent it assists them in deciding how to allocate costs." *Id.*

Here, Batson proposes an allocation methodology that takes site-specific factors and evaluates them across a range of equitable considerations based on what has been previously accepted in similar CERCLA litigation. But Batson's opinions are specific to this Site in this case. Importantly, Arco does not argue that Batson proposes an improper method of cost allocation or that his findings lack an adequate factual foundation. Batson's opinions may therefore be considered to the extent they provide a model for allocating cost without relying on his recitation or

---

"gatekeeper" function is largely irrelevant. *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018).

explanation of the law. As argued by Arco itself, "the Court is fully capable of synthesizing the relevant case law and applying it to the evidence at trial." (Doc. 82 at 13.) Arco's motion to exclude Batson's testimony is denied.

## II. Muno

CFAC disclosed William Muno to offer opinions as to the appropriateness of potential remedial actions at the Site and the recoverability of their associated costs. Muno provided two expert reports, an initial report dated February 13, 2020, (Doc. 82-5), and a rebuttal report dated March 13, 2020, (Doc. 82-6). Both reports included an exhibit listing the documents he considered in reaching his opinions. (*See* Doc. 82-5 at 15–18; Doc. 82-6 at 22–26.) Muno testified at his July 8 deposition that these two exhibits contained "the vast majority of the documents" he considered in preparing each report. (Doc. 82-7 at 4.) However, on July 3, 2020, just days before his deposition, CFAC disclosed a "Revised Exhibit B" that listed over one-hundred additional "other" documents Muno considered between the disclosure of his reports and the taking of his deposition. (Doc. 82-8.) When asked about them during his deposition, Muno explained that even though a number of the documents predate his reports, he received them from CFAC's counsel after he disclosed his rebuttal report and that he reviewed them prior to the deposition. (Doc. 82-7 at 4.) Arco therefore seeks to prohibit Muno from offering his opinions about the untimely documents disclosed in Revised Exhibit B.

When disclosing a retained expert witness, Federal Rule of Civil Procedure 26(a)(2)(B) requires the disclosure include both "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming" those opinions, and "any exhibits that will be used to summarize or support them." "The parties must make their expert disclosures at the time and in the manner ordered by the Court." *Laslovich v. St. Farm Fire & Cas.*, 307 F.R.D. 533, 535 (D. Mont. 2015) (citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011)). "If a party fails to disclose this information, the party cannot use the non-disclosed information at trial 'unless the failure was substantially justified or is harmless.'" *Id.* (quoting Fed. R. Civ. P. 37(c)).

As outlined in the Scheduling Order, it is this Court's practice to limit expert testimony to that which is fairly disclosed in the expert's report even if a deposition is taken and the expert goes beyond the bounds of his report in that deposition. (*See* Doc. 44 at ¶ 9(c) ("An inadequate report or disclosure may result in the exclusion of the expert's opinions at trial even though the expert has been deposed.")). Arco's present challenge will be handled much the same way. As argued by CFAC, the disclosure at issue involved only documents considered by Muno, not any change or addition to Muno's opinions themselves. Arco's motion is therefore granted to the limited extent that Muno remains bound by the opinions

6

and exhibits fairly disclosed in his timely reports. Arco can use cross-examination to explore whether his opinions are deficient because he did not review certain documents until *after* those opinions were authored.

### CONCLUSION

Based on the foregoing, IT IS ORDERED that Arco's motion to exclude (Doc. 81) is GRANTED to the limited extent that Muno's testimony is constrained to what is disclosed in his expert reports; the motion is DENIED in all other respects.

DATED this 15th day of October, 2020.

9:51 A.M.

Donald W. Molloy, District Judge
United States District Court