W. John Tietz
BROWNING, KALECZYC,
  BERRY & HOVEN, P.C.
800 N. Last Chance Gulch, Suite 101
P.O. Box 1697
Helena, Montana 59624-1697
Tel: (406) 443-6820
Fax: (406) 443-6883
Email: john@bkbh.com

Eliot Lauer (*pro hac vice*)
Charles B. Howland (*pro hac vice*)
Nathaniel Ament-Stone (*pro hac vice*)
CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Tel: (212) 696-6000
Fax: (212) 697-1559
Email: elauer@curtis.com
       chowland@curtis.com
       nament-stone@curtis.com
*Attorneys for Plaintiff*
*Columbia Falls Aluminum Company, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| COLUMBIA FALLS ALUMINUM COMPANY, LLC<br><br>Plaintiff,<br><br>- against -<br><br>ATLANTIC RICHFIELD COMPANY<br><br>Defendant. | Case No. 18-cv-00131-DWM<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND FINDINGS OF FACT NOS. 423 AND 427 AND JUDGMENT** |

1

Plaintiff Columbia Falls Aluminum Company, LLC ("CFAC") files this brief in opposition to Defendant Atlantic Richfield Company's ("ARCO's") motion to amend Findings of Fact Nos. 423 and 427 in the Court's Findings of Fact and Conclusions of Law (Doc. 148) and the Judgment entered on September 27, 2021 (Doc. 151).

As ARCO acknowledges, its motion may only be granted if "necessary to correct manifest errors of law or fact." (Doc. 164 at 2.) ARCO ***has not identified any error*** in the Court's conclusion that "ARCO failed to present any evidence that CFAC's additional property . . . should be considered in this valuation." For this reason, ARCO's motion is baseless and should be denied.

ARCO asks this Court to give it an award of $4,112,500, or 35% of its expert's appraised value of miscellaneous parcels that have no connection to the ongoing EPA remediation of the 807-acre Site. ARCO challenges this Court's denial of its request, in which the Court found that "ARCO failed to present any evidence that CFAC's additional property was part of the original acquisition sale or should be considered in this valuation." (Doc. 148 at ¶ 423.) ARCO takes issue with the first half of this sentence, citing testimony by its real estate appraisal expert (Thomas G. Stevens) that the unrelated parcels he appraised were in fact all listed in the 1985 sale. Yet ARCO utterly fails to address the Court's substantive conclusion that ARCO offered no evidence to support an award to ARCO of an

2

interest in CFAC's additional assets outside of the Superfund site, which parcels (i) have no connection to the remediation and (ii) for which ARCO will not spend even a dime.

In fact, Stevens testified that his appraisal of the Superfund site—the only real property appraised by CFAC's expert, Kraig P. Kosena—is based on a *post-remediation* value, *i.e.*, after CFAC and ARCO have contributed their allocated shares of the cost to remediate and thereby have created the Site's post-remediation value. In stark contrast, Stevens acknowledged that his appraisal of the miscellaneous other parcels was based on their *current* value, *i.e.*, was not connected to any cost of remediation nor the creation of any post-remediation value. Stevens testified:

```
20  Q    Okay.  Now as for the Superfund site itself which is
21       actually subject to the remediation, your appraisal was
22       3.75 million, right?
23  A    Yes.
24  Q    And you appraised the plant parcel on the assumption that
25       it will be remediated and able to be used, right?

 1  A    Yes.
 2  Q    The other properties, did you -- you appraised them on
 3       their current state, right?
 4  A    Yes.
```

3

(Trial Tr. 1731:20-1732:4.)

Stevens's unchallenged testimony is that the value of these miscellaneous parcels is not tied to the remediation. Therefore, there is no way to relate the value of these parcels to the line of cases that award a credit to contributing parties for their shares of the value that is created through remediation efforts. Here, ARCO did not present any evidence that the value of these parcels will in any way be connected to ARCO's allocated share of the remediation. Thus, ARCO offered no basis at trial for considering the unrelated parcels as part of any credit or award; or, as this Court put it, "ARCO failed to present any evidence that CFAC's additional property . . . should be considered in this valuation." (Doc. 148 at ¶ 423.)

Courts have recognized that "[i]f a landowner successfully seeks contribution from others for environmental cleanup costs, that owner should likely be required to share the benefits of *any increase in value brought about by the cleanup*." *Trinity Indus. v. Greenlease Holding Co.*, 903 F.3d 333, 362-63 (3d Cir. 2018) (collecting cases) (emphasis added). Here, consistent with Stevens's testimony, there is no evidence whatsoever regarding "any increase in value brought about by the cleanup" with respect to the non-Superfund properties.[1]

---

[1] ARCO's footnote (Doc. 164 at 5 n.1) misleadingly implies that CFAC agreed ARCO should receive a credit reflecting an allocated share of "the property." CFAC's position, which the Court adopted, was expressly limited to the Superfund site, because the sole basis for any credit is ARCO's allocated share of remediation costs. (Pl.'s Proposed Findings of Fact & Conclusions of Law, Doc.

Indeed, in its Proposed Findings of Fact and Conclusions of Law, ARCO recognized that its ability to recover any part of the value of these non-Superfund parcels depended upon proof of their enhanced post-remediation value:

> **Because the cleanup work will enhance the value of CFAC's property** and Atlantic Richfield will be paying for a portion of that work, Atlantic Richfield should as a matter of equity receive a credit for its share of that enhancement. . . . **The questions for the Court to decide on this point are the amount of the enhanced value of CFAC's property** and the share of Atlantic Richfield.
>
> **Mr. Stevens testified that the post-cleanup value of the entire property that CFAC obtained from Atlantic Richfield is estimated to be $15.5 million. . . . Because the entire property will benefit from the cleanup, as Mr. Stevens testified,** the Court finds Mr. Stevens' valuation more credible and relevant.

(Defendant's Proposed Findings of Fact and Conclusions of Law ¶¶ 167-168, Doc. 127) (emphasis added). Despite ARCO's use of the past tense in its proposed findings submitted weeks before trial, Stevens actually testified that he did *not* appraise the post-cleanup value of the non-Superfund parcels, and ARCO ultimately did not offer any exhibits or testimony to connect its remediation expense to the value of these properties. By ARCO's own reasoning and evident failure of proof, the instant motion should be denied.

\*   \*   \*

---

125, at ¶¶ 420, 465.) Where there is no cost of remediation and no evidence of changed value post-remediation, ARCO has no right to CFAC's property; and ARCO offers no support for such a claim.

Without any logical or legal basis, ARCO claims that the Court's application of the discretionary Gore factor for economic benefit somehow mandates an appropriation of unrelated assets based on the allocation for cleanup of the Superfund site. But if economic benefit is to be used as a basis for property division, this Court has already concluded—based on the testimony of ARCO expert David Hall—that ARCO enjoyed 67% (and CFAC only 33%) of the parties' combined $844 million in economic benefits from running the facility from 1955 through its closure in 2009. (Doc. 148 at ¶¶ 417, 420.)

Undeterred, ARCO suggests that the non-Superfund parcels still owned by CFAC should be viewed as a new or additional economic benefit to CFAC of $11.75 million, and that somehow ARCO should have a share in the potential proceeds from future sales of these properties, even though ARCO offered no evidence at trial connecting those properties to the remediation. Indeed, there was no testimony by Hall or any other witness, nor any documentary evidence whatsoever, with respect to any post-2009 economic benefit to CFAC. Hall's analysis ended when the facility closed and CFAC stopped earning any revenue from the smelter.

In fact, since the facility's closure, as this Court found, CFAC spent more than $22 million on various decommissioning, closure, and cleanup expenses (Doc. 148 at ¶ 245)—a figure which does not even include real estate taxes, routine

6

maintenance, administrative costs, or significant additional legal fees and business expenses which CFAC never sought to recover as response costs. This sum dwarfs the estimated resale proceeds of $11.75 million from the various non-Superfund parcels appraised by Stevens. CFAC's potential revenue from selling these parcels, in combination with the expenses it has already incurred since shutdown, would therefore still reflect a significant post-2009 net loss, which (if combined with pre-2009 economic benefits) would reduce CFAC's share of combined economic benefits below 33%. Perhaps this is why Hall ended his economic benefit analysis in 2009.

Whether the estimated $11.75 million value is additional benefit or not, ARCO has no right to any portion of CFAC's non-Superfund property. As set forth in *Trinity* and numerous other cases, the basis for ARCO's receiving a $787,500 credit reflecting part of the Superfund site's post-remediation value was *not* "additional economic benefit" to CFAC, but rather that ARCO—through its future contribution to the remediation—will pay to help create the post-remediation value of the Site, and therefore should share in the value that it will ultimately help to create.

In sum, the non-Superfund parcels do not reflect any additional net economic benefit to CFAC, as there is none. Moreover—and fatal to ARCO's motion—these parcels are utterly divorced from any costs ARCO will owe for

remediation of the Superfund site. There is no basis to award ARCO a portion of CFAC's unrelated property, any more than there is a basis to impose on ARCO responsibility for CFAC's various non-recoverable expenses incurred since the smelter was closed.

## **CONCLUSION**

For the foregoing reasons, CFAC requests that this Court deny ARCO's motion.

Dated this 5th day of November, 2021

By  /s/  *Nathaniel Ament-Stone*

BROWNING, KALECZYC, BERRY & HOVEN, P.C.
  W. John Tietz
800 N. Last Chance Gulch, Suite 101
P.O. Box 1697
Helena, Montana 59624-1697
Tel:  (406) 443-6820
Fax:  (406) 443-6883

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
  Eliot Lauer (*pro hac vice*)
  Charles B. Howland (*pro hac vice*)
  Nathaniel Ament-Stone (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Plaintiff*
 *Columbia Falls Aluminum Company, LLC*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing document complies with Local Rule 7.1(d)(2). The brief contains 1,423 words, excluding the caption, certificate of compliance, and certificate of service. The undersigned relied on the word count of the word-processing system used to prepare the brief.

By: /s/  *Nathaniel Ament-Stone*
Nathaniel Ament-Stone

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of November 2021, a true and correct copy of the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND FINDINGS OF FACT NOS. 423 AND 427 AND JUDGMENT** was served via ECF on the following counsel of record for defendant Atlantic Richfield Company:

Adam S. Cohen, Esq.
Jonathan W. Rauchway, Esq.
Gail Wurtzler, Esq.
Randy J. Cox, Esq.

By:  /s/  *Nathaniel Ament-Stone*
         Nathaniel Ament-Stone